**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KENNETH MILLER, ) | |
| ) | |
| ) | 2:17-cv-01457 |
| Plaintiff, ) | |
| ) | Chief United States Magistrate Judge |
| vs. ) | Cynthia Reed Eddy |
| ) | |
| GLEN MCCLURE, OSMILT JUAREZ, ) | |
| ANDREW ANGEL, NICHOLAS ) | |
| CHURNEY, RALPH COLLINS, AARON ) | |
| DILLARD, GERALD McCOY, ) | |
| CHRISTOPHER KARFELT, NURSE EARL ) | |
| BLAKER, JOHN/JANE DOES (Medical ) | |
| Staff), SUPERINTENDENT ROBERT ) | |
| GILMORE, JOHN E. WETZEL, and THE ) | |
| PENNSYLVANIA DEPARTMENT OF ) | |
| CORRETIONS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION[1]

Plaintiff, Kenneth Miller, is a state prisoner in the custody of the Pennsylvania Department

of Corrections ("DOC") currently incarcerated at SCI-Benner.  The events giving rise to this

lawsuit occurred while Miller was housed at SCI-Greene. He has asserted a myriad of

constitutional claims pursuant to 42 U.S.C. § 1983 alleging he was assaulted by corrections officers

three times on November 15, 2015,  and was subsequently denied medical care for the injuries he

---

[1]      In accordance with the provisions of 29 U.S.C. § 636(c)(1), all served and identified parties
have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this
case, including trial and the entry of a final judgment.  *See* ECF Nos. 26 and 29.  While unserved
defendants generally must also consent for a magistrate judge to exercise jurisdiction based on
"consent of the parties" under that statute, *see Williams v. King*, 875 F.3d 500 (9th Cir. 2017), this
Court is not aware of any decision holding that consent is necessary from defendants who are both
unserved and unidentified. Any attempt to name or serve these unidentified defendants now would
be untimely under FRCP 4(m). Moreover, discovery has closed and the dispositive motion
deadline has passed. The Court therefore concludes that consent of the unserved JOHN/JANE
DOES (Medical Staff) is not necessary to proceed under § 636(c).

sustained; that while housed in the RHU he was subjected to a number of unconstitutional conditions of confinement and was issued three retaliatory misconducts. All Defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, the motion will be granted in part and denied part.

## Relevant Procedural History

Miller commenced this action on November 8, 2017, by filing a motion for leave to proceed *in forma pauperis* with an attached pro se Complaint (ECF No. 1). He named as defendants the Pennsylvania Department of Corrections ("DOC") and the following DOC officials and employees: Glen McClure, Osmilt Juarez, Andrew Angel, Nicholas Churney, Ralph Collins, Aaron Dillard, Gerald McCoy, Christopher Karfelt, Nurse Earl Blaker, John/Jane Does (medical staff), Superintendent Robert Gilmore, and John E. Wetzel.

Defendants filed a motion to dismiss on March 29, 2018. (ECF No. 22). In response, Plaintiff filed an Amended Complaint, which remains his operative pleading. (ECF No. 30). Thereafter, Defendants filed a partial motion to dismiss the amended complaint which was denied on October 16, 2018. (ECF No. 41). Discovery has closed and Defendants now move for summary judgment on all claims arguing alternatively that (i) Miller has failed to exhaust his administrative remedies and (2) that the record is insufficient to support Miller's claims that his constitutional rights were violated. (ECF No. 77). Defendants in support of their motion of filed a brief (ECF No. 78), a concise statement of material facts (ECF No. 79), and a voluminous appendix of record evidence, which includes DVAR footage (ECF No. 80).[2] In response, Miller filed a brief in

---

[2] The use of video evidence at the summary judgment stage was approved by a panel of the Court of Appeals for the Third Circuit in *Fennell v. Cambria County Prison*, 607 F. App'x 145, 148 (3d Cir. 2015) (not precedential), with the determination that the district court properly relied on videotape evidence to resolve factual disputes. The decision in *Fennell* relied on *Scott v. Harris*, 550 U.S. 372, 380 (2007), for the proposition that " '[w]hen opposing parties tell two different

opposition, with 89 pages of exhibits, including a number of affidavits submitted by fellow DOC prisoners (ECF No. 84), and a response to the Concise Statement (ECF No. 83). Defendants then filed a reply brief (ECF No. 85), to which Miller filed a sur- reply brief. (ECF No. 86). The matter is fully briefed and ripe for disposition.

## **Factual Background**

The following relevant factual background is taken from the summary judgment record, and is viewed in the light most favorable to Miller, as he is the non-movant.

The genesis of this lawsuit arises from events which occurred on November 15, 2015, when Miller and another inmate[3] were ordered to leave the afternoon yard for non-compliance with yard rules. (ECF No. 79, at ¶ 1). Upon leaving the yard, Inmate Ferebee assaulted Officer Churney. (*Id*. at ¶ 2). Miller testified in his deposition that, "[o]nce I seen everything taking place, I went towards the confrontation . . . I was trying to get into the situation, but there -- I winded up bumping into Officer Amy (sic) and me and him got into a shoving match." Pl's Depo. at 15 (ECF No. 80-3 at 104, Exh. 15). Sgt. Juarez observed the assault on Officer Churney and went over to assist. (ECF No. 79 at ¶ 5). When Sgt. Juarez arrived, he saw what was happening with Miller and Officer Angel and he intervened by taking Miller to the ground and helping Officer Angel and other staff to cuff Miller. Meanwhile, Officer Churney and Officer Dillard gained control of Inmate Ferebee. Officer Churney then saw that Miller was fighting and resisting Officer Angel and Sgt. Juarez, so he approached Miller and ordered him to stop fighting. (*Id*. at ¶¶ 7, 8). Miller contends that at this

---

stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purpose of ruling on a motion for summary judgment.' " 607 F. App'x at 148 (quoting *Scott*, 550 U.S. at 380).

[3]    Miller did not identify the other inmate in the Amended Complaint. However, in the Office of Special Investigations and Intelligence ("OSII") report the other inmate is identified as Inmate Ferebee. (ECF No. 80-1 at 1).

point, Sgt. Juarez jumped on his back and choked him until he became unconscious. He further contends that while he was unconscious, Sgt. Juarez sprayed him with OC spray. (ECF No. 83 at ¶ 9). Non-defendant Lt. Schamp responded to a staff assault call in the yard. When he arrived at the scene, he observed that Miller and Ferebee were being restrained and he supervised their removal from the ground and subsequent escort. Miller was then escorted to medical triage in a reverse escort position. Miller alleges that while being escorted to medical, he was assaulted by Defendants in two separate areas. According to Miller, "once inside the building and out of camera range," he was thrown to the floor and beaten by Defendants. He was "kicked, punched, choked and slammed face first into the floor repeatedly. All while I struggled to breathe due to the pepper spray burning my face and lungs." Affidavit /Declaration of Kenneth Miller (ECF No. 84-2). Miller then alleges that inside the medical triage area, he was slammed on to a gurney and punched in the groin by Officer McClure. After being photographed, Miller alleges he was "lifted in the air and slammed face first into the floor by defendants," and then lifted off the floor and slammed face first into a wall. *Id*. According to Miller, he received no treatment while in the medical triage area and "was never assessed or treated for any injury that stemmed from the assaults." (ECF No. 83 at ¶ 35.)

Upon completion of his medical evaluation, Defendants escorted Miller to the Restricted Housing Unit ("RHU") and placed him in a cell with no mattress or running water. He contends he had to use toilet water to wash the pepper spray out of his eyes. Further, according to Miller, while in the RHU, Defendants would at times refuse to give him his meal tray and at other times would tamper with his meal tray by removing food from it. On November 17, 2015, Miller was moved to a Psychiatric Observation Cell ("POC"), where he remained until November 23, 2015, when he was returned to RHU. According to the summary judgment record, when Miller was

returned to RHU it seemed as though he "was given his allotment of in-cell personal property and treated with less hostility."  Declaration of Anthony Allen, ¶ 10.  (ECF No. 84-2).

Miller was issued two misconducts on November 15, 2015, for assaulting officers– one for kneeing Officer Angel during the yard incident and one for kicking Officer McCoy while in the medical triage area.  He received a third misconduct on November 16, 2015, for refusing to obey orders.  In his Amended Complaint, Miller alleges that the misconducts were issued in retaliation for filing grievances.  During his deposition, however, he testified that the misconducts were either false or excessive and they were in retaliation "[f]or the incident between me and Angel for what happened in the yard."  Pl's Depo at 57 (Exh. 15, ECF No. 80-3 at 146).

Having identified the claims at issue and the factual basis for those claims, the Court now turns to the threshold question of whether Miller has exhausted the administrative remedies available to him. *See Rinaldi v. United States*, 904 F.3d 257, 264-65 (3d Cir. 2018) (noting exhaustion of administrative remedies is a threshold question).

### Exhaustion under the Prisoner Litigation Reform Act

The PLRA provides that "no action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes.  *Porter v. Nussle*, 534 U.S. 516 (2002).

Defendants argue that Miller's claims are barred procedurally by the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a) (the "PLRA"), because (1) he did not request monetary

relief in his initial grievance and (2) he did not perfect his appeal to final review. The Court will proceed to address both arguments.

The United States Court of Appeals for the Third Circuit, in a recent unpublished opinion, reiterated the analytical structure for a failure-to-exhaust affirmative defense:

> As formulated in this Circuit, the failure-to-exhaust affirmative defense has two distinct stages. The first inquiry is whether the prison-employee defendants can demonstrate that the inmate failed to exhaust the on-the-books remedies. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007) (explaining that the prison's grievance policy supplies " 'the yardstick' for determining what steps are required for exhaustion" (quoting *Spruill v. Gillis,* 372 F.3d 218, 231 (3d Cir. 2004))); *see also Ross v. Blake*, 136 S.Ct. 1850, 1859 (2016); *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018). If the defendants can make that showing, then at the second stage, the inmate plaintiff bears the onus of producing evidence that the on-the-books remedies were in fact unavailable to him or her.[1] *See Rinaldi*, 904 F.3d at 268.

> [1] This order of evaluation is not absolute, and it is permissible to consider the second stage first, *see, e.g., Small,* 728 F.3d at 271-72, but this ordering is consistent with the prison-employee defendants bearing the burden of production at the first stage, before the inmate plaintiff inherits the burden at the second.

> The state of facts dictates the appropriate legal standard for evaluating the exhaustion defense. If there is no genuine dispute of material fact, then the exhaustion defense may be evaluated as a matter of law at summary judgment. If there is a genuine dispute of material fact related to exhaustion, then summary judgment is inappropriate . . . .

*West v. Emig,* 787 F. App'x 812, 814 (3d Cir. 2019) (non-precedential). Here, because Defendants have moved for summary judgment, the analysis turns on whether any genuine issue of material fact exists and whether Defendants are entitled to judgment as a matter of law.

No analysis of exhaustion may be made absent an understanding of the DOC Inmate Grievance System Policy, DC-ADM 804, which provides inmates an avenue to seek review of issues involving prison conditions. (ECF 80-3, Exh. 10). DC-ADM 804 is built around a multi-tier process:

The DC-ADM 804 grievance system consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee, also known as the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"), within fifteen working days, and the inmate will receive a final determination in writing within thirty days. *See Booth v. Churner*, 206 F.3d 289, 293 n.2 (3d Cir. 1997), *aff'd*, 532 U.S. 731 (2001). DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," "shall identify individuals directly involved in the events," and "shall specifically state any claims he wishes to make concerning violations of Department directives, regulations, court orders, or other law." DC-ADM 804, § 1(A)(11).

*Hughes v. Hayes*, No. 1: 16-cv-0038, 2018 WL 6697184 at *4 (W.D.Pa. Dec. 20, 2018). DC-ADM 804 also states that "[i]f the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance." (ECF No. 80-3 at 53).

On November 29, 2015, Miller filed Grievance 600829, which states in its entirety, the following:

On the 15th of Nov. 2015, I was involved in a physical altercation during yard which was captured on video. I was choked unconscious and then sprayed with paper spray to awake me. I was then drug up a hill backwards to medical in which I was then assaulted by several officers while handcuffed. I was then thrown into a cell without medical assistance and left to suffer in pain. I was then not fed for 2 days as punishment and denied access to call the Hotline for prisoner abuse. I am asking for access to use the prisoner abuse hotline to report a claim of prisoner abuse by staff.

Exh. 8, *Id*. at 16-17. Clearly, Miller did not request monetary relief in this initial grievance. However, the summary judgment record evidence reflects that on January 8, 2016, while this grievance was still being investigated, Miller filed Grievance 607440 in which he stated as follows:

I am willing to amend grievance num: 600829. I would like to include the following: compensation and punitive damages. I am also asking for camera to be installed in the medical area where I was assaulted. I am also asking for separations

from all of the officers involved: Officers Churney, Angel, Dillard, Collins, S.G.T. Juarez and Lieutenant McClaire. I am asking for a full investigation due to the filing of this grievance. I fear retaliation.

Grievance 607440 (emphasis added) (ECF No. 80-3 at 42). Three days later, on January 11, 2016, Miller submitted a Request to Staff Member in which he stated, "I would desperately like to know if my amendment for (600829) was amended to my original grievance. Could you please let me know. Would appreciate it." (*Id*. at 21). The next day, Miller was advised that "Grievance #600829 is under investigation for allegation of abuse. A response will be provided to you once completed." (*Id*.) The record reflects that Miller sought acknowledgment that his request to amend his grievance had been accepted on at least three additional occasions. *See id*. at 22, 23, and 45. Each time, he was told that his original grievance remained under investigation and a response would be forwarded once the investigation was completed. No response every mentioned Miller's request to amend the grievance.

The record reflects that Miller was never informed that his request to amend his grievance was rejected. Moreover, Defendants have not pointed to anything in DC-ADM 804 that prevents an inmate from amending his grievance while the grievance remains under investigation. For these reasons, the Court finds that Defendants' arguments are without merit and the amendment cured any deficiency in the original grievance.

The more difficult question is whether Miller perfected his grievance to final appeal. The record shows that Miller complied with each step of the administrative process through Steps 1 and 2. It is compliance at Step 3 that is in question. The summary judgment record reflects that on June 28, 2016, Michael Bell, Grievance Officer with SOIGA, sent an Action Required notice to Miller requesting copies of Miller's initial grievance, his appeal to the Facility Manager, and the Facility Manager's decision/response. (*Id*. at 30). The record contains correspondence from

Miller dated July 12, 2016, which appears to be in response to Bell's request. (*Id*. at 31). However, it also appears from the summary judgment record that SOIGA never received Miller's response because on August 9, 2016, Bell informed Miller that his grievance was never properly appealed to Final Review:

> Mr. Miller, you write and ask the status of the above grievances.[4] Be advised that as of 6/28/16, as a courtesy to you, sent you 2 separate Action Required noticed (sic) prompting you to forward necessary documents for Final Review. Nothing had been received and there was no response from you; thus, neither grievance was ever properly appealed to Final Review. You may review the policy for clarity. Any attempt to appeal now may be deemed untimely. Future correspondence regarding either grievance may be filed without action or reply.

SOIGA receipt of information, 8/9/16 (ECF No. 84-4). Upon receiving this notification, Miller immediately responded informing Bell that as soon as he received the 6/28/16 notice, he forwarded "everything right away." (ECF No. 80-3 at 32). In support, Miller has produced cash slips and requests for copies of the Facility Manager's responses, dated 6/26/26 and 6/29/16, both of which are stamped received by DOC on 6/29/2016 (ECF Nos. 80-3 at 35, 36); and requests for the same documentation on 8/9/2016 (*Id*. at 37). On August 17, 2016, SOIGA issued its Final Appeal Decision dismissing Miller's appeal as untimely. (*Id*. at 33). After receiving SOIGA'a final decision, Miller filed Grievance 642870 in which he complained that Grievances 606085 / 600829 had been mishandled as they had not been forwarded to SOIGA. (*Id*. at 70-71). On 10/13/2016, Grievance 6422870 was denied on initial review on the following grounds:

> Review of grievances 600829 and 606085 finds that SOIGA sent you an action required notice on June 28, 2016, for both grievances, advising you of what you were required to provide. You were also informed by Mr. Bell on August 9, 2016, that despite sending you the action required notices, nothing had been received from you. The decision to dismiss your final level appeals will not be reversed by this office.

Initial Review Response, 10/03/16 (*Id*. at 72).

---

[4] The request from Miller to which Michael Bell is responding does not appear to be in the summary judgment record.

Miller's attempt to comply with the Action Report by resubmitting his paperwork stands in contrast to those cases where noncompliance has been found to preclude a finding of administrative exhaustion. See, e.g., *Keys v. Craig,* 160 F. App'x 125 (3d Cir. 2005) (finding that a prisoner whose administrative appeal was not acted upon because he failed to attach the required documentation had not "substantially complied" with the grievance process when he filed the documents late and with the wrong party); *Rivera v. Pennsylvania Dept. of Corrections,* 2010 WL 339854, No. 09–1009 (W.D.Pa. Jan. 2, 2010) (finding a prisoner did not substantially comply with the prison's administrative procedure where instead of correcting the grievance, the prisoner filed appeals to the Facility Manager and the DOC Secretary's Office arguing that the two page limit was invalid on First Amendment grounds); and *Lee v. Lindsey*, 2009 WL 1076390, No. 4:06-cv-1824 (M.D. Pa. April 21, 2009) (finding a prisoner did not substantially comply with the prison's administrative procedure where he failed to file a grievance on the proper form, was told of this defect, and failed to timely submit an amended grievance).

It is apparent from Miller's brief in opposition to Defendants' motion for summary judgment that he believes DOC personnel never forwarded his appeal packet to SOIGA. And Defendants have produced no evidence to counter Plaintiff's position. Under these circumstances, the Court is reluctant to find that Miller has failed to perfect his appeal to final review. Accordingly, the Court finds that the administrative process was not available to Miller and his failure to exhaust the administrative procedures available to him is excused.

### Standard of Review

The standard for assessing a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is well-settled. A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law. "Only disputes over facts that might affect the outcome of the suit

under the governing law will properly preclude the entry of summary judgment." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Furthermore, "summary judgment will not lie if the

dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Id*. at 250.

On a motion for summary judgment, the facts and the inferences to be drawn therefrom

should be viewed in the light most favorable to the non-moving party. *See Reeves v. Sanderson*

*Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587-88 (1986); *Hudson v. Proctor & Gamble Paper Prod. Corp.,* 568 F.3d

100, 104 (3d Cir. 2009) (citations omitted). It is not the court's role to weigh the disputed evidence

and decide which is more probative, or to make credibility determinations. *See Anderson*, 477

U.S. at 255; *Marino v. Indus. Crating Co*., 358 F.3d 241, 247 (3d Cir. 2004); *Boyle v. County of*

*Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). "Only disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary

judgment." *Anderson*, 477 U.S at 247-48. An issue is "genuine" if a reasonable jury could

possibly hold in the nonmovant's favor with respect to that issue. *See id*. "Where the record taken

as a whole could not lead a reasonable trier of fact to find for the nonmoving party, there is no

'genuine issue for trial'." *Matsushita*, 475 U.S. at 587; *Huston,* 568 F.3d at 104.

This standard is somewhat relaxed with respect to pro se litigants. Where a party is

representing himself pro se, the complaint is to be construed liberally. A pro se plaintiff may not

however, rely solely on his complaint to defeat a summary judgment motion. *See, e.g., Anderson*,

477 U.S. at 256 ("Rule 56(e) itself provides that a party opposing a properly supported motion for

summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). Allegations made without any evidentiary support may be disregarded. *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000); *see also Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990) ("[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment.").

With these standards in mind, the Court will address each of Miller's claims.

## Discussion

*1.  Excessive Force Claims / Failure to Protect Claims.*

Through his Amended Complaint, Miller alleges that "[t]he actions of Defendants Lt. McClure, Sgt. Juarez, Officer Angel, Officer Churney, Officer Collins, Officer Dillard, Officer McCoy, Officer Kerfelt, Nurse Blaker and John Doe Officers who were involved in the vicious attacks on Plaintiff, beating Plaintiff while handcuffed and using pepper spray on him constituted an excessive use of force" in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution.  ECF No. 30, ¶ 63.  He also alleges his constitutional rights were violated by "[t]he failure of Defendants Wetzel, Gilmore, Lt. McClure, and Sgt. Juarez to take action to address the assaults." *Id*. at ¶ 64.

The Eighth Amendment's protection against cruel and unusual punishment is the "primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified." *Brooks v. Kyler*, 204 F.3d 102, 105 (3d Cir. 2000).  The core inquiry of an excessive force claim is "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm'." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (quoting *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)).  In making this determination, the Court must examine the need for the application of force, the relationship

between the need and the amount of force used, the extent of injury inflicted, the extent of threat to the safety of staff and inmates, and any efforts to temper the severity of a forceful response. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The application of the *Whitley* factors to any given case is necessarily fact specific. Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9.

The version of events offered by Defendants differs dramatically from the version offered by Miller, the non-movant. In short, the fundamental question of whether Miller was subjected to an excessive amount of force is a hotly disputed factual matter, requiring credibility determinations. These contrasting facts indicate that summary judgment should not be granted at this stage.

With that said, however, the Court finds that Officer Dillard and Nurse Blaker are entitled to summary judgment on this claim based on their lack of personal involvement. The undisputed record evidence reflects that Officer Dillard only responded to the assault by Inmate Ferebee in the yard. He was not involved in restraining or escorting Miller. The record evidence also reflects that Nurse Blaker did not treat Miller while in the medical triage area because his responsibility that day was to treat the corrections officers.

And to Defendants Wetzel and Gilmore, there are "two general ways" in which a supervisor-defendant may be liable: (1) where the supervisor established a policy, custom, or practice that caused the harm; or (2) where the supervisor personally participated in the constitutional violation. The United States Court of Appeals for the Third Circuit explained these two general types of supervisory liability as follows:

> First, liability may attach if they, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.,* 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting *Stoneking v. Bradford*

*Area Sch. Dist.,* 882 F.2d 720, 725 (3d Cir. 1989)). Second, "a supervisor may be
personally liable under § 1983 if he or she participated in violating the plaintiff's
rights, directed others to violate them, or, as the person in charge, had knowledge
of and acquiesced" in the subordinate's unconstitutional conduct. *Id.* (citing *Baker
v. Monroe Twp.,* 50 F.3d 1186, 1190–91 (3d Cir. 1995)). "Failure to" claims—
failure to train, failure to discipline, or, as in the case here, failure to supervise—
are generally considered a subcategory of policy or practice liability.

*Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 316-19 (3d Cir. 2014), *reversed on other*

*grounds by Taylor v. Barkes,*575 U.S. 822 (2015).

The summary judgment record evidence is void of any evidence that would meet any of

the criteria necessary for supervisory liability on either Secretary Wetzel or Superintendent

Gilmore on this claim.

Accordingly, Plaintiff's claim of excessive force / failure to protect will proceed to trial

against Defendants Lt. McClure, Sgt. Juarez, Officer Angel, Officer Churney, Officer Collins,

Officer McCoy, and Officer Karfelt.

2.      *Conditions of Confinement*

In Paragraph 66 of his Amended Complaint, Miller alleges that Defendants McClure,

Juarez, Gilmore, Wetzel and "John Doe Officers" denied him clothing, mattress, linens, showers

and food while he was in RHU.  Defendants are entitled to summary judgment on this claim for a

number of reasons.

First, Miller has made no attempt to identify the "John Doe Officers."  Any attempt to

identify or name these defendants now would be untimely.

As to Defendants McClure and Juarez, as Miller admitted in his deposition, these

defendants were not in the restricted housing unit.  Plaintiff specifically acknowledged this in his

deposition:

Q: Were any of the defendants in this case involved in – in the issues of your cell?

A: I can't say for certain, no. I can't say for certain they were. Once I was in RHU, I would notice that I couldn't see anything, anybody.

Q: Okay. Was it different staff in the RHU?

A: <u>Of course, yeah, different staff.</u>

Pl's Depo., at 48-40 (emphasis added) (ECF No. 80-3 at 137-38). Miller has offered nothing other than his own suspicion and speculation that any deprivation of food or other items came at the request of either Defendant McClure or Juarez.

The summary judgment record also reflects that Superintendent Gilmore's role was limited to responding to Miller's grievances and to responding to two request slips written by Miller in January of 2016 in which he explained to Miller that he was not entitled to an institutional transfer. (ECF No. 20-2 at 34 and 35). Responding to a grievance or a request slip is not sufficient to show the actual knowledge necessary for personal involvement. *Rode v. Dellarciprete*, 845 F.2d 1195, 1208 (3d Cir. 1988).

Furthermore, the summary judgment record is void of any evidence demonstrating that Secretary Wetzel or Superintendent Gilmore "established and maintained a policy, practice, or custom, which resulted in Miller's constitutional rights being violated or that they directly participated in violating Miller's rights, directed others to violate them, or, "as the person in charge, had knowledge of and acquiesced" in any of the conduct which resulted in Miller's constitutional rights being violated.

For all these reasons, Defendants McClure, Juarez, Gilmore, and Wetzel are entitled to summary judgment on Miller's conditions of confinement claims.

### 3.    Denial of Medical Care Claim

Miller claims that "[t]he actions of Defendants Nurse Blaker, John Doe Medical Staff,[5] Wetzel, Gilmore, and 'other Defendants'[6] in depriving Plaintiff of proper medical care, and the failure to proper document Plaintiff's injuries constitute deliberate indifference . . " Defendants argue they are entitled to summary judgment on this claim.  The Court agrees.

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, and requires that prisoners receive access to basic medical treatment.  *Estelle v Gamble*, 429 U.S. 97 (1976).  In the medical context, a constitutional violation under the Eighth Amendment occurs only when officials are deliberately indifferent to a prisoner's serious medical needs.  *Id.* at 105.  To establish a violation of a constitutional right to adequate medical care, a prisoner is required to point to evidence that demonstrates (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need.  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury."  *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

---

[5]    Miller has never moved to amend his complaint to identify the unidentified John Doe Medical Staff.  Any attempt to name or serve them now would be untimely under FRCP 4(m).  Discovery has closed and the dispositive motion deadline has passed.

[6]    Plaintiff has never identified these "other Defendants" or specified what their alleged involvement was or if they had knowledge of the need for medical treatment.  As with the "John Doe Medical Staff" defendants, any attempt to identify or name these defendants now would be untimely.  Accordingly, any reference to "other Defendants" will be stricken.

The record evidence reflects that RN Tate was the nurse who triaged and assessed Miller on November 15, 2015. She stated during the investigation that she treated his abrasions and flushed his eye with eye wash, which was required for irritation from OC spray. (ECF No. 80-3 at 42, 98, 98, 104). Nurse Tate is not a defendant in this case.

The record evidence also reflects that Defendant RN Blaker's only involvement with Miller on November 15, 2015, was to take photographs of Miller while he was in the medical unit. (ECF No. 84-3 at 3, 4, 5). It was RN Blaker's responsibility that day to medically assess the corrections officers. (ECF No. 80-3 at 61).

Thereafter, the record reflects that Miller was seen on five additional occasions by prison medical personnel, none of whom are defendants in this case, to address his complaints / concerns regarding his injuries. For example, the record reflects an x-ray of his orbital area was taken, he received pain medication, and had optometry following-up examinations. Where a prisoner is being treated by a physician, a nurse cannot be liable for denial or delay of medical care unless the nurse has reason to believe that the doctor is mistreating the prisoner. *Perkins v. Schwappach*, 399 F. App'x 759, 761 (3d Cir. 2010). There is no record evidence from which a reasonable fact finder could find that RN Blaker had any reason to believe that Miller was being mistreated by any medical professional.

Turning to Defendants Superintendent Gilmore and Secretary Wetzel, it is undisputed that they are both non-medical prison officials. As the Court of Appeals recently reiterated:

> As our precedent makes clear, "a non-medical prison official" cannot be charge[d] with the Eighth Amendment scienter requirement of deliberate indifference when the "prisoner is under the care of medical experts" and the official does not have a "reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Spruill*, 372 F.3d at 236; see also *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (holding that non-physicians cannot be "considered deliberately indifferent simply because they

failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor").

*Pearson v. Prison Health Serv.*, 850 F.3d 526, 543 (3d Cir. 2017). Here, the record reflects that Miller was being treated by medical professionals and there is no factual support for any allegation that Defendants Gilmore or Wetzel had any involvement in or knowledge of the need for medical treatment. These non-medical defendants are entitled to defer to the medical professionals under these circumstances, particularly when it comes to decisions about treatment. *See Whitenight v. Wetzel*, No. 2: 16-cv-1864, 2019 WL 6828392, * 4 (W.D.Pa. Dec. 12, 2019) (citing *Davis v. Collins*, 230 F. App'x 172, 174 (3d Cir. 2007)). Further, as explained *supra,* these supervisory defendants cannot be held liable simply by virtue of their supervisory positions. *Evancho* v. Fisher, 423 F.3d 347, 354 (3d Cir. 2005).

For all these reasons, the Court finds that Defendants Nurse Blaker, Superintendent Gilmore, and Secretary Wetzel are entitled to summary judgment on Miller's denial of medical care claims.

### 4. Retaliatory Misconduct Claims

In Paragraph 67 of his Amended Complaint, Miller alleges his constitutional rights were violated by "[t]he actions of Defendants Collins, Karfelt, McCoy, Gilmore and Wetzel in the issuance of false misconducts against Plaintiff in retaliation for filing grievances." During his deposition, Miller clarified his claim and stated that the misconducts were issued in retaliation for the yard incident which occurred on November 15, 2015.

"Retaliating against [an inmate] for the exercise of his constitutional rights is unconstitutional." *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012) (citing *Mitchell v. Horn*, 318 F.3d 523, 529-31 (3d Cir. 2003)). "A prisoner alleging retaliation must show (1) constitutionally protected conduct; (2) an adverse action by prison officials sufficient to deter a person of ordinary

firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (internal quotation marks omitted) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)).

Miller alleges that each of the three misconducts he received were retaliatory. The fatal problem for Miller is that he cannot establish a causal link between any protected conduct and the issuance of the misconducts.

On November 15, 2015, Miller was issued two misconducts, to wit: B 855873 charging him with assault, using abusive language to an employee, and refusing to obey an order all stemming from the incident which occurred in the yard; and B 855865 charging him with assault which occurred in the medical unit. The next day, November 16, 2015, Miller was issued Misconduct B 851176 charging him with refusing to obey an order to uncover his cell window which he had covered with request slips and toilet paper.

Miller claims in his Amended Complaint that the three misconducts were issued in retaliation for filing grievances. (ECF No. 30, ¶ 67). While the filing of grievances in the prison system is constitutionally protected conduct, *Ingram v. Lane*, No. 2: 16-cv-1191, 2018 WL 3370673, at *4 (W.D. Pa. May 22, 2018), the uncontested summary judgment record reflects that Miller's grievance which is central to this lawsuit was not filed until November 29, 2015, almost two weeks <u>after</u> he had been issued the three misconducts. Further, Miller's Grievance History reflects that prior to receiving these three misconducts, Miller had not filed a grievance since January 22, 2015, nearly ten months prior to the incident in yard on November 15, 2015. (*See* Exh. 14, ECF No. 80-3 at 88). Temporary proximity of more than a few days is insufficient to establish causation. *Booze v. Wetzel*, 2015 WL 5173937 at * 13-16 (M.D.Pa. 2015) (collecting cases).

During his deposition, Miller claimed that he received the misconducts in retaliation "[f]or the incident between me and Angel for what happened in the yard." P's Depo at 57 (Exh. 15, ECF No. 80-3 at 146.) No discussion is warranted as this clearly is not protected activity.

Further, even assuming that Miller had engaged in protected activity prior to the issuance of the three misconducts, his claim still fails as the uncontroverted summary judgment evidence reflects that Miller did not appeal any of the misconducts to final review. *See* Declaration of Zachary Moslak (ECF No. 80-3 at 14). The Court finds that Miller has failed to meet his burden of production as he fails to address the issue of failure to exhaust his retaliatory misconduct claim.

For all these reasons, summary judgment will be granted to Defendants on Plaintiff's retaliation claims.

### 5.    *Defendant Pennsylvania Department of Corrections*

Defendants contend that the DOC is entitled to summary judgment because DOC is not a person under § 1983 and because Miller's claims against the DOC are barred by the immunity afforded to the Commonwealth of Pennsylvania by the Eleventh Amendment.

Defendants are correct that DOC is a state agency and, as such, is not a "person" under Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). As a result, Miller's claims against the DOC are barred by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985); *Pennhurst State School & Hospital v. Haldeman*, 465 U.S. 89 (1984).

Furthermore, "Pennsylvania has not waived its immunity from suit in federal court." *Toth v. California Univ. of Pennsylvania*, 844 F.Supp.2d 611, 648 (W.D. Pa. 2012) (citing 42 Pa.C.S.A. § 8521(b)). Nor did Congress intend by the general language of Section 1983 to override the traditional sovereign immunity afforded to the states. *Quern v. Jordan*, 440 U.S. 332, 342-45

(1979); *see also Toth,* 844 F.Supp.2d at 648. Consequently, the DOC is entitled to summary judgment.

## Conclusion

For all these reasons, Defendants' motion for summary judgment will be granted in part and denied in part. Summary judgment will be granted to Defendants on Miller's claims regarding conditions of confinement, denial of medical care, and retaliation. Defendants the Pennsylvania Department of Corrections, Dillard, Blaker, Gilmore, and Wetzel shall be terminated from this lawsuit.

Summary judgment will be denied on Plaintiff's claims of excessive force / failure to protect and will proceed to trial against Defendants Lt. McClure, Sgt. Juarez, Officer Angel, Officer Churney, Officer Collins, Officer McCoy, and Officer Karfelt.

An appropriate order will be filed separately.

Dated: March 4, 2020

BY THE COURT:

 s/Cynthia Reed Eddy
Cynthia Reed Eddy
Chief United States Magistrate Judge

cc:    KENNETH MILLER
       EC 6130
       SCI Benner Township
       301 Institution Drive
       Bellefonte, PA 16823
       (via United States First Class Mail)

       Timothy Mazzocca
       Office of Attorney General
       (via ECF electronic notification)